**UNITED STATES of America, Plaintiff,**

v.

**Paul E. GRIFFITHS, David A. Morey and Randall R. Waltman, Defendants.**

**No. 88–CR–0008–S.**

United States District Court, D. Utah, C.D.

Oct. 28, 1988.

Addendum of Findings Nov. 23, 1988.

See also 691 F.Supp. 1310.

**1038**

Tena Campbell, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff.

Peter W. Guyon, Salt Lake City, Utah, for Griffiths.

Edwin F. Guyon, Salt Lake City, Utah, for Morey.

Kenneth R. Brown, Salt Lake City, Utah, for Waltman.

### MEMORANDUM RULING

SAM, District Judge.

This matter is before the court under advisement after the October 25, 1988 hearing on the motions of defendants Randall R. Waltman, Paul E. Griffiths and David A. Morey to withdraw *Alford* pleas and on the motion of Griffiths and Morey to strike the government's sentencing memorandum and factual allegations.

### I. *Facts*

On August 22, 1988, Waltman, Griffiths and Morey were scheduled to begin trial on various counts related to insurance fraud. That day they notified the court they wanted to plead guilty to two of the mail fraud charges by entering pleas fashioned under principles set forth in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970). *Alford* allows the court to accept a guilty plea despite a defendant's "professed belief in his innocence" when the government shows a "strong factual basis for the plea" and the defendant has a "clearly expressed desire to enter it." *Id.*, 400 U.S. at 38, 91 S.Ct. at 168. In other words, a defendant may intelligently conclude that even if he should assert his innocence, his interests require acceptance of a plea agreement because "the record before the judge contains strong evidence of actual guilt." *Id.*, 400 U.S. at 37, 91 S.Ct. at 167. Throughout the day on August 22, the defendants and their counsel met with counsel for the government for intensive plea negotiations that resulted in the subject plea agreement. Before accepting the *Alford* pleas late that afternoon, the court carefully reviewed with each of the defendants the provisions in his Statement by Defendant in Advance of Plea of Guilty, a document that addresses all concerns set out in Fed.R.Crim.P. 11(c) and (d). The court specifically asked each defendant whether the representations in paragraph 11 were correct, that is, that the only plea agreement with the government provided the defendants would plead guilty to Counts X and XVIII of the Indictment (mail fraud) and, at the time of sentencing, the government would move to dismiss the remaining twenty-four counts. Each defendant answered affirmatively. Counsel for the government then read the factual basis upon which the United States would proceed, including paragraph one of each of the two counts, which re-alleged the entire scheme and artifice to defraud detailed in the indictment. Griffiths and Morey plead guilty to Counts X and XVIII; however, Waltman requested another day to consider the plea because he was tired. The government moved to withdraw its plea offer to Waltman, and the court rescheduled his trial for August 24, 1988.

The next day, August 23, Waltman notified the government he wished to plead guilty to the two counts. During a conference in chambers, the court agreed to accept the plea only after counsel for Waltman, Kenneth Brown, satisfied the court the elements of the *Alford* plea were met in Waltman's decision to plead. At the conference, Mr. Brown stated on the record:

> [MR. BROWN]: I would like to indicate to the court that since we were here last evening that we spent the evening up until 9:00 o'clock last night, myself and Mr. Dibblee, going over the case ... in great detail. We have since that time

been up to the United States Attorney's Office and reviewed a large part of the evidence that we felt uncomfortable with when we were last here.

We would also note for the record that this is a twenty-six count indictment; that the offer that has been made is an *Alfred* [sic] guilty plea to two, five-year counts. *We have discussed in great detail with Mr. Waltman the evidence. We have discussed what we believe the evidence to be. We have reviewed with him virtually every aspect of this case both from our point of view as to how we view the evidence and as to how we believe the government views the evidence. He has had the benefit of talking to people that one may normally rely on in this situation. . . . We have reviewed with Mr. Waltman the provisions of Section 1341 of Title 18. And we have reviewed with him the counts in the information. And based upon . . . that review, he has indicated to us his desire. And it is our recommendation that the Court accept an Alfred [sic] plea to the counts in the state of defendant in advance of the guilty plea.*

*He is acknowledging at this time that the evidence is such that there would be a conviction, that the conviction would be for a greater number of counts than two counts. And he is also acknowledging that the evidence is susceptible to an interpretation and the probable interpretation was that there was false information contained in various documents and there was a financial gain that came from those financial documents.*

Is that correct Mr. Waltman?

MR. WALTMAN: Yes, it is.

Tr. 2–4 (emphasis added). The court then interrogated Waltman under oath, asking the same Rule 11 questions posed the day before and specifically ascertaining Waltman's plea was voluntary.

Nearly two months later, on October 19, 1988, Waltman moved to withdraw his plea six days before sentencing, asserting he may withdraw his plea as a matter of right

because one *Alford* element is missing: the clearly expressed desire to enter the plea despite his belief in his innocence. He contends the fact that he now moves to withdraw demonstrates he does not have a clearly expressed desire to enter the plea. Waltman also asserts he may withdraw his plea as a matter of discretion because the government violated the "spirit" of the plea agreement by not limiting the factual allegations in the sentencing memorandum submitted to Probation and Parole to those underlying the two counts to which the defendants plead. He claims he did not understand the entire scheme and artifice to defraud would be incorporated into the two counts to which he plead. In the alternative, he reserves the right to dispute the accuracy of factual allegations contained in the presentence investigation report.

On October 21, 1988, Griffiths moved to strike the government's sentencing memorandum and factual allegations or, in the alternative, to withdraw his *Alford* plea for the same reasons Waltman asserted. At the October 25 hearing, the court granted Morey's oral motion to join Griffiths' motion. After listening to the parties' arguments and reviewing their memoranda, the court is prepared to rule on all motions before it.

## II. *Withdrawal of the Alford pleas*

Fed.R.Crim.P. 32(d) states: "If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. . . ." In a recent opinion, *United States v. Triplett*, the Sixth Circuit discusses what constitutes a "fair and just reason" for withdrawal. 828 F.2d 1195 (6th Cir.1987). *Triplett* notes the movant bears the burden to show his motion to withdraw his plea should be granted, *id.* at 1197; *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir.1977; *United States v. Lombardozzi*, 436 F.2d 878, 881 (2d Cir.), *cert. denied*, 402 U.S. 908, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971), and the weight of the burden must be determined in light of the principle that " 'a guilty plea is a grave and solemn act to be

accepted only with care and discernment....' " *Triplett*, 828 F.2d at 1198 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970)). "When Rule 11 is complied with, ... pleas should not be considered tentative or contingent acts subject to presentence withdrawal whenever the government is unable to show prejudice." *Triplett*, 828 F.2d at 1198. In fact, if the movant should fail his burden to show a fair and just reason, the government need not show it will be prejudiced by withdrawal. *Id.; United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir.1977).

The district court has broad discretion to decide a motion for withdrawal of plea. *Triplett*, 828 F.2d at 1197; *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978). "In determining whether there is a fair and just reason to grant a motion to withdraw a plea, the district court must review all circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *Triplett*, 828 F.2d at 1197; *United States v. Jerry*, 487 F.2d 600, 611 (3d Cir.1973).

The *Triplett* Court rejected Triplett's reason for withdrawal: he was confused when he entered the plea or he misunderstood the agreement itself. The Court noted defense counsel discussed the plea agreement with Triplett and the district court made every effort under Rule 11 to ensure he considered his options and entered the plea agreement "voluntarily and knowingly." *Triplett*, 828 F.2d at 1197. The Court also noted too much time (84 days) had passed between the original plea and the motion to withdraw for Triplett to claim he experienced a "swift change of heart." *Id.* at 1198.

> The shorter the delay [between the entrance of the plea and the motion to withdraw], the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.

*Id.* at 1197; *see United States v. Barker*, 514 F.2d 208, 220 (D.C.Cir.), *cert. denied,*

421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

Here, nearly two months passed between the plea and Waltman's motion to withdraw; Griffiths' and Morey's motions were made even later. This period of time is too long for any of the defendants' to claim a "swift change of heart"; therefore, the court will closely scrutinize their asserted reasons for withdrawal, to determine whether the defendants meet their burden of persuasion.

■ The first reason asserted is that the defendants have an absolute right to withdraw because their motions negate the presence of the *Alford* element of a clearly expressed desire to enter the plea despite their protestations of innocence. If the court were to accept that reason as "fair and just," it would carve out a new category for *Alford* pleas and create new tests for their withdrawal; more specifically, an *Alford* plea would be subject to *mandatory withdrawal at any time* upon a defendant's simple declaration he no longer desires to enter the plea. Such a determination would create the very evil sought to be avoided by the *Triplett* and *Barker* Courts: "Were defendants allowed to withdraw pleas without showing a fair and just reason to do so, pleas 'would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.' " *Triplett*, 828 F.2d at 1198 (quoting *Barker*, 514 F.2d at 221). Before accepting any plea, the court takes great care to determine whether the defendant understands the comprehensive Rule 11 factors and has a clearly expressed desire to enter the plea. The sole distinction between a regular plea of guilty or nolo contendere and an *Alford* plea is that the *Alford* plea is entered upon intelligent appraisal of the strength of the government's evidence, despite a protestation of innocence. In *Alford*, the Supreme Court considers any differences among these pleas "of no constitutional significance":

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the impo-

sition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to imposition of prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. 400 U.S. at 37, 91 S.Ct. at 167.

This court concludes the question whether a defendant demonstrates a clearly expressed desire to plead despite his protestation of innocence will be answered by examining *only the circumstances surrounding his original plea*, not those arising at a later date. Consequently, an *Alford* plea is subject to the same tests as a guilty or nolo contendere plea, and unless a defendant should demonstrate a "swift change of heart," he must meet his burden to show a fair and just reason for withdrawal. A defendant has no absolute right to withdraw an *Alford* plea; rather, that decision remains within the broad discretion of the court.

■ The second reason asserted is that the defendants did not understand the entire scheme and artifice to defraud would be incorporated into the counts to which they plead. The court observes that Counts X and XVIII are in two separate sections of the Indictment and the introductory paragraph to each section reads: "The grand jury re-alleges paragraphs 1 through 13 of the Scheme and Artifice to Defraud to each of [the following counts]." Indictment at 9, 12. Counsel for the defendants each represented to the court he reviewed fully and carefully the Indictment with his client (the above-emphasized portion of the record made by Mr. Brown for Waltman is indicative of the representations made by counsel for Griffiths and Morey); and, at the initial plea acceptance and sentencing hearing, counsel for the government read the factual basis on which the government would proceed, including the paragraphs re-alleging the entire scheme and artifice to defraud. Considering these facts coupled with the Rule 11 procedures followed, the

court is not convinced the defendants did not understand the entire scheme and artifice to defraud would be re-alleged in the counts to which they plead. The re-allegation of the entire scheme into each count is neither an unusual nor surprise feature of an indictment for conspiracy, and the defendants' claim they did not understand it does not provide a fair and just reason for withdrawal of plea. Here, as in *Triplett*, every effort was made to ensure the defendants considered their options and entered the plea agreement "voluntarily and knowingly." *Triplett*, 828 F.2d at 1197. From the defendants' statements, the court is persuaded they made an intelligent choice to enter *Alford* pleas, upon advice of counsel, after review of the government's evidence convinced them trial could result in their conviction on more counts than the two to which they plead. No defendant contends that factor has changed.

■ The third reason asserted is that the government violated the "spirit" of the plea agreements by including in the sentencing memorandum to Probation and Parole factual allegations beyond those underlying the two counts to which the defendants plead. However, that argument ignores longstanding rules of criminal procedure and practice. Fed.R.Crim.P. 32(c)(2)(F) adds to the enumeration of items includable in the report of the presentence investigation "such other information as may be required by the court." Under 18 U.S.C. § 3577,* "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The government maintains not only that the plea agreement did not contain a promise in spirit or otherwise to limit the presentence information to that underlying Counts X and XVIII, but that the government would have never

---

* Section 3577 was renumbered 3661, effective November 1, 1987, pursuant to Pub.L. 98–473, tit. II, § 235(a)(1). In *United States v. Swapp*, 695 F.Supp. 1140 (D.Utah 1988), this court declared unconstitutional Pub.L. 98–473, tit. II,

§§ 211–39, 98 Stat.1987; therefore, the former sentencing scheme is now in place, and section 3577 will be applied in lieu of the identical language in section 3661.

agreed to such a limitation. That position is correct under section 3577 and particularly in this case where the entire scheme and artifice to defraud is incorporated into each count to which the defendants plead.

Clearly, the defendants' argument regarding the scope of the information in the presentence report does not provide a fair and just reason for withdrawal of plea. Nor do the defendants' contentions some of the factual allegations in the report are false provide adequate reason for withdrawal. *See United States v. Needles,* 472 F.2d 652, 654 (2d Cir.1973) (an inaccurate presentence investigation report has no bearing on the validity of the plea).

After considering all the circumstances surrounding the pleas and closely scrutinizing the defendants' assertions, the court concludes they fail their threshold burden to show a fair and just reason for withdrawal of their pleas. So concluding, the court need not reach the question whether the government would be prejudiced by the withdrawals.

### III. *Challenges to the factual allegations in the presentence report*

Both the motion of Griffiths and Morey to strike the government's sentencing memorandum and Waltman's reservation of right to challenge factual allegations in the presentence investigation report can be resolved under the procedure described in Fed.R.Crim.P. 32(c)(3)(A) and (D). Subsection (A) provides, "The court shall afford the defendant and the defendants' counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it." Subsection (D) further delineates,

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the

court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

The court will allow the defendants three days from the date of this order to submit a memorandum setting out all disputed facts contained in the presentence investigation report and supporting proffers. The government will have three days to respond with its proffers; and, at that juncture, the court will determine whether it will need a hearing before making its subsection (D) findings and determinations. Any hearing granted will be limited to questions concerning the content rather than scope of the presentence investigation report.

### IV. *Conclusion*

The court denies the motions of Waltman, Griffiths and Morey for withdrawal of plea. The court also denies the motion of Griffiths and Morey to strike the government's sentencing memorandum and factual allegations. Regarding disputations of fact in the presentence investigation report, the parties will follow the procedure outlined in section III of this ruling.

### ADDENDUM OF FINDINGS

On October 28, 1988, the court entered a Memorandum Ruling denying the motions of defendants Paul E. Griffiths, David A. Morey and Randall R. Waltman for withdrawal of their *Alford* pleas. The court has since become aware of the Tenth Circuit's decision in *United States v. Keiswetter,* 860 F.2d 992 (10th Cir.1988), that the trial court must enter findings on its basis for determining the sufficiency of the facts underlying the guilty plea.[1] Therefore, the

---

1. The *Alford* plea is fashioned under principles set out in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). *Alford*

allows the district court to accept a guilty plea despite a defendant's protestation of innocence when (1) the government shows a "strong factu-

court makes an addendum of findings regarding factual support for the plea.

## I. *Discussion*

■ The *Alford* requirement that there be a strong factual basis for the plea "focusses not on the defendant's state of mind, but on the trial judge's assessment of the factual basis for the guilty plea." *Id.*, at 995; *United States v. Allen*, 804 F.2d 244, 248 (3d Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987). The judge's assessment must comport with the standard established in Fed. R.Crim.P. 11(f),[2] and is left to his discretion. However, because "exercise of [that] discretion can only be judged by reference to the record," *Keiswetter*, at 996, trial judges must produce a record that can be reviewed for abuse of discretion. *Id.; United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *Id.* at 995; *Gregory v. Solem*, 774 F.2d 309, 312 (8th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986).

Saying an evidentiary hearing is not necessary to evince a factual basis for the guilty plea, at 995, *Keiswetter* cites three possible sources of factual support: the defendant's signed and sworn statement in what is the equivalent of the present Statement by Defendant in Advance of Plea of Guilty; the government's statement, at the plea hearing, of the factual basis for the plea; and the presentence material. *Id.* at 996, 997. This court relied on all three of these sources to determine the factual basis for the plea. Moreover, although it is unclear whether "strong evidence" must support every *Alford* plea,[3] the court believes the government's evidence against Morey is not only strong but overwhelming.

### A. Statement by Defendant in Advance of Plea of Guilty

Because the court discussed at some length in its Memorandum Ruling the defendants' assertions regarding the extent to which they understood the charges against them, it incorporates by reference that discussion into these findings. Memorandum Ruling, at 2–3, 10–11. It further notes the prefatory paragraph of the Statement by Defendant reads, "I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining and completing this form[.]" As set out in the ruling, the record contains ample evidence that statement, signed and sworn by each defendant, accurately reflects his state of mind at the time of plea.

---

al basis for the plea" and (2) the defendant has a "clearly expressed desire to enter it." *Id.*, 400 U.S. at 38, 91 S.Ct. at 168. The *Keiswetter* Court accepts as sufficient evidence its defendant had a clearly expressed desire to plead, the fact that he was first granted the full panoply of rights afforded criminal defendants. *Keiswetter*, at 994, (citing *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). Holding the defendant's articulated reason for withdrawal of plea (failure to recover in civil litigation) was not "fair and just," Fed.R.Crim.P. 32(d), the Court was solely concerned with the *Alford* element requiring a strong factual basis for the plea and remanded for findings on that question. Because this court's holdings on issues regarding the instant defendants' "clearly expressed desire" and "fair and just reasons" are fully discussed in the Memorandum Ruling and harmonize with *Keiswetter*, it will confine this addendum to findings regarding the factual basis for the plea.

**2.** Fed.R.Crim.P. 11(f) provides, "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

**3.** *Keiswetter* explains,

Contrary to the assertion in the dissent, it is not clear that *Alford* mandated a finding of 'strong evidence' in every case. Rather, because the record in that case revealed 'strong evidence' of the defendant's guilt, the plea of guilty was not constitutionally infirm. Neither *Alford,* nor any case subsequent to *Alford,* suggests that 'strong evidence' is the only constitutionally adequate standard for the acceptance of an *Alford* plea. The outer limits of the factual basis sufficient for an *Alford* plea have yet to be defined.

at 996, n. 6.

### B. Government's statement of factual basis for the plea

The *Keiswetter* Court was troubled by a deficiency in the government's statement of the factual basis for the plea: the government's terse statement did not include evidence of the necessary element of the defendant's intent. That deficiency is not present here. In its somewhat lengthy and detailed statement at the plea hearing, the government outlined evidence of intentional misrepresentations to the insureds and the insurance companies involving rebating, check/wash transactions and submission of multiple applications for insurance policies without the knowledge of the insured. That evidence includes testimony of insureds regarding misrepresentations made them, checks showing wash transactions and forged applications for insurance policies. Tr. 32–38. Although, at hearing, one of the defendants, Griffiths, disputed what the court considers relatively minor points in the government's statement; as Assistant United States Attorney Tena Campbell pointed out, the statement merely shows what the government expects to show at trial and the defendants' need not agree with it for Rule 11(f) purposes. The defendants were later given the opportunity to dispute presentence factual allegations by following Fed.R.Crim.P. 32(a) and (d) procedure.

### C. Presentence material

Because the presentence report is based on the government's Sentencing Memorandum, the court will focus on the memorandum. Without delineating the myriad and numerous factual details set out, the court will capsulize the categories of evidence related to the defendants' guilt. The government presented evidence to support twenty-six counts of the defendants' fraudulent activity and conspiracy to commit fraud by participating in an elaborate scheme involving rebating, check/wash transfers and submission of the same application to several insurance companies. That evidence is supported by several witnesses and reams of documents showing the defendants, among other things, forged applications and letters; lied to insureds about the nature of their policies; lied to insurance companies about the personal data of the insureds and the number of policies for which they were applying; received illegal commissions; applied for policies using fictitious names; substituted names for those of the soliciting agent; washed checks with the insureds; in short, generally misrepresented every aspect of their business. The recitation of alleged facts is peppered with specific and implicit statements regarding the defendants' intent to defraud. Further, the memorandum delineates the role of each defendant in the scheme, Sentencing Memorandum at 19–24, and the court finds that although the defendants differ slightly in degree of culpability, there is for each a strong factual basis underlying the two counts to which he plead guilty.

The court concludes these findings with its previous observation that the defendants "made an intelligent choice to enter *Alford* pleas, upon advice of counsel, after review of the government's evidence convinced them trial could result in their conviction on more counts than the two to which they plead." Memorandum Ruling at 11. Because at no juncture in the defendants' efforts to withdraw their pleas did they contend that factor had changed or offer any salient countervailing evidence to the factual allegations, it appears they consider the government's evidence as daunting as does this court. Certainly, the asserted factual basis for the pleas quiets the *Solem* concern there should be "some evidence a defendant actually committed the offense." *Keiswetter,* at 995; *Solem,* 774 F.2d at 312.

## II. *Conclusion*

The court attaches to its Memorandum Ruling this Addendum of Findings showing the basis for its determination that strong evidence supports each defendant's guilty plea.